NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

KELLEY-ROSS & ASSOCIATES,
INC.,

Plaintiff-Appellant,

v.

EXPRESS SCRIPTS, INC.,

Defendant-Appellee.

No. 23-3634

D.C. No. 2:22-cv-00148-TSZ

MEMORANDUM*

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted December 3, 2024
Seattle, Washington

Before: BOGGS, McKEOWN, and R. NELSON, Circuit Judges.**

This diversity case arises from a contract dispute between Kelley-Ross & Associates, Inc. (Kelley-Ross), a retail pharmacy, and Express Scripts, Inc. (ESI), a pharmacy benefit manager (PBM).

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Danny J. Boggs, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

On appeal, Kelley-Ross challenges the district court's grant of summary judgment for ESI on Kelley-Ross's breach-of-contract claim. Kelley-Ross also maintains that the district court erroneously dismissed both its breach-of-good-faith claim and its claim under the Washington Consumer Protection Act (WCPA). Wash. Rev. Code § 19.86.020. We have jurisdiction over this appeal under 28 U.S.C. § 1291, and we affirm.[1]

This court reviews de novo both a grant of summary judgment and a dismissal for failure to state a claim. *Idaho Sporting Cong., Inc. v. U.S. Forest Serv.*, 92 F.3d 922, 925 (9th Cir. 1996).

1. The district court properly granted summary judgment to ESI on Kelley-Ross's breach-of-contract claim. Kelley-Ross argues that ESI breached the parties' contract by failing to reimburse Kelley-Ross for dispensing generic Truvada at the rate that the contract set for "Covered Specialty Medications." According to Kelley-Ross, while only the drug "Truvada" is listed in the contract's "Covered Specialty Medications" table, Truvada's generic counterpart is implicitly included in that chart and should therefore receive the higher "Covered Specialty Medications" reimbursement rate.

---

[1] The parties are familiar with the facts, so we will not recount them here.

ESI did not breach the parties' contract because neither the phrase "generic Truvada" nor the name Emtricitabine/Tenofovir Disoproxil Fumarate (the chemical name of a generic formulation equivalent to Truvada) appear in the "Covered Specialty Medications" table, and the contract dictates that only medications listed in that table will be reimbursed at the elevated "Covered Specialty Medications" rate.

Under Washington law, if a contract "is clear and unambiguous, the court must enforce the contract as written; it may not modify the contract or create ambiguity where none exists." *Lehrer v. Wash. Dep't of Soc. & Health Servs.*, 5 P.3d 722, 726 (Wash. Ct. App. 2000). Undefined words in a contract are to be "given their plain, ordinary and popular meaning," which "may be ascertained by reference to standard English dictionaries." *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 882 P.2d 703, 718 (Wash. 1994).

"Truvada" is defined as a "trademark" "used for a preparation of emtricitabine and tenofovir disoproxil fumarate." Truvada, Merriam-Webster Medical Dictionary, https://www.merriam-webster.com/medical/Truvada (last accessed January 15, 2025). Definitions from industry resources align with Merriam-Webster's definition. *See City of Spokane ex rel. Wastewater Mgmt. Dep't v. Washington State Dep't of Revenue*, 38 P.3d 1010, 1013 (Wash. 2002) ("Technical language should be given its technical meaning when used in its technical field."). Industry texts refer to "Truvada" as "combination tenofovir and emtricitabine," and identify "Gilead

3

Sciences" as its manufacturer. *See* DAVID D. CELENTANO, ET AL., GORDIS EPIDEMI-OLOGY 20 (7th ed. 2023); *see also* KUCERS' THE USE OF ANTIBIOTICS: A CLINICAL REVIEW OF ANTIBACTERIAL, ANTIFUNGAL, ANTIPARASITIC, AND ANTIVIRAL DRUGS 2613 (M. Lindsay Grayson et al. eds., 6th ed. 2010) (identifying "Truvada" as a combination drug marketed under a trade name and manufactured by Gilead Sciences). The generic version of Truvada is a different product that, as both parties agree, was manufactured by Teva Pharmaceuticals during the time period at issue.

While Kelley-Ross argues that the word "Generics-A" in the price chart listed above the "Covered Specialty Medications" table functions to add generic Truvada to the table, there is no contractual language that indicates that the word "Generics" in that price chart by itself transposes into the "Covered Specialty Medications" table all of the generic versions of the brand-name drugs listed in that table. To the contrary, as stated above, the contract specifies that *exclusively* the medications listed in the "Covered Specialty Medications" table are reimbursed at the specialty rate.

That generic Truvada did not exist at the time the parties executed the contract makes Kelley-Ross's argument even less convincing. *See Radliff v. Schmidt*, 532 P.3d 622, 625 (Wash. Ct. App. 2023) ("The ultimate goal is to determine the parties' intent at the time they executed the contract rather than 'the interpretations the parties are advocating at the time of the litigation.'" (internal citation omitted)). Ultimately, including the generic drug of every brand-name version listed in the

4

"Covered Specialty Medications" table as soon as that medication becomes available as a generic would be a significant, surprising change to the coverage of the table. If that were the intention of the contract and operative table, there would be some evidence of that in the contract, and there is not. *See Wilkinson v. Chiwawa Cmtys. Ass'n*, 327 P.3d 614, 619 (Wash. 2014) ("The lack of an express term with the inclusion of other similar terms is evidence of the drafters' intent.").

2. The district court properly dismissed Kelley-Ross's claim for breach of the duty of good faith and fair dealing because Kelley-Ross's complaint does not point to any contractual language that obligated ESI to reimburse generic Truvada at the "Covered Specialty Medications" rate. Kelley-Ross presses that ESI had the power to add generic Truvada to the parties' contract after the contract was executed. Kelley-Ross's argument is unavailing because ESI had no implied contractual obligation to do everything that it had the power to do. *See Johnson v. Yousoofian*, 930 P.2d 921, 925 (Wash. Ct. App. 1996) ("If there is no contractual duty, there is nothing that must be performed in good faith.").

3. Finally, we do not consider Kelley-Ross's WCPA claim because Kelley-Ross failed to replead the claim in its operative complaint after the claim was dismissed without prejudice and with leave to amend. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012).

**AFFIRMED.**

5